BLANCHE L. ANDREWS, Respondent, *v.* WILLIAM C. BREWSTER et al., Executors, etc., Appellants.

Plaintiff, who was entitled to a share in the estate of C., presented a claim against his executor B. for the alleged negligent failure of the latter to rent certain real property belonging to said estate. In consideration of the payment to her by B. of her share in the estate and his parol agreement that he would leave her a share of his own estate, equal to that he should leave H. and K., and that it would amount to more than sufficient to compensate her for any loss she had sustained, plaintiff conveyed to B. her interest in the estate and executed a written release of all claims against B. on account of the loss of rent. B. died, leaving a will, by which he gave to H., K. and plaintiff $1,000 each; his residuary estate he directed to be distributed according to law. H. and K. took each a one-twelfth interest in said residue. In an action against B.'s executors to recover damages for an alleged breach of the parol agreement, *held*, that the

release of the claim for rents was a good consideration therefor; that it was not necessary for plaintiff to show that B. had been negligent in not renting the property, or that a valid claim existed against him for the loss of the rents.

Also *held*, that the written release was not the repository of the whole agreement between the parties, but simply a part of it, hence plaintiff was not precluded thereby from proving the other part under the rule excluding parol evidence tending to vary or contradict a written contract.

The trial court, at defendant's request, charged the jury that the only agreement they could find was that B. had agreed to leave plaintiff by his will a share of his estate equal to that which he should leave H. and K. This was not excepted to. The court, however, refused to charge that plaintiff could not recover more than an amount to which, under the will, H. and K. were entitled; but charged that she could recover, irrespective of what H. and K. received, the amount of her claim for lost rent, with interest. A verdict was rendered for the full amount of the claim. The General Term modified the verdict by allowing, in case plaintiff should by stipulation consent thereto, a recovery for an amount equal to one-third of the residuary estate with interest. *Held*, that both rulings were error.

*It seems*, the General Term had power to permit plaintiff to stipulate to modify the verdict and to direct judgment for the reduced sum instead of ordering a new trial, as when the fact of the making of the agreement was established the amount of the verdict plaintiff was entitled to, under any rule of damages adopted, was a question of law.

Defendant moved on the trial for a dismissal of the complaint on the ground that as there had been no accounting by the executor, the exact amount of the residuary estate was not ascertainable, and plaintiff's only remedy was in equity. *Held*, untenable; that the court had ample power to inquire into the amount of the estate and ascertain the sum to be divided among the residuary legatees; that if the case was one triable by the court at Special Term, it could have been sent to that court by the Circuit Court, but as defendants made no such request their right to object to a jury trial did not survive its commencement.

(Argued February 24, 1891; decided March 10, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department entered upon an order made October 24, 1889, setting aside a verdict in favor of plaintiff and granting a new trial unless plaintiff stipulates to reduce the verdict as specified, and in case such stipulation is made overruling defendants' exceptions and denying a motion for a new trial, which stipulation was made.

This action was brought to recover damages for an alleged breach of contract between plaintiff and Seabury Brewster, plaintiff's testator.

The facts, so far as material, are stated in the opinion.

*A. R. Dyett* for appellants.   The plaintiff has not been permitted simply to reduce the verdict which the jury found, but to substitute another and fictitious verdict, founded on a different theory and composed of entirely different elements.   This cannot legally be done.   (*Whitehead* v. *Kennedy,* 69 N. Y. 468; *Moffat* v. *Sackett,* 18 id. 522.)   It is well settled that an erroneous ruling is presumed to have been injurious and calls for a new trial, unless the court can see that it could not possibly have effected the result.   (54 N. Y. 69; 56 id. 664; 54 id. 334, 341, 342; 80 id. 181; 13 Wkly. Dig. 199; 59 N. Y. 555, 643; 47 id. 186.)   The court erred in admitting evidence to prove or tending to prove the parol agreement between Seabury Brewster and the plaintiff, upon which the plaintiff's cause of action alleged in the complaint depends.   The court also erred in admitting evidence of what the plaintiff said to Seabury Brewster when she signed the papers.   It was incompetent to vary the release.   (*Coon* v. *Knapp,* 8 N. Y. 402; *Van Bokelen* v. *Taylor,* 62 id. 105; *Eighmie* v. *Taylor,* 98 id. 294; *Dana* v. *Fiedler,* 12 id. 40; *Walls* v. *Bailey,* 49 id. 464; *Collender* v. *Dinsmore,* 55 id. 200; *Sterns* v. *Tappin,* 3 Duer, 294; *Telkins* v. *Whyland,* 24 N. Y. 338; *Randell* v. *Reynolds,* 20 J. & S. 145; *Naumberg* v. *Young,* 15 Vroom, 331, 335; *Spickerman* v. *McChesney,* 43 Hun, 637; *Fordyce* v. *Scribner,* 108 Ind. 85; *Brady* v. *Cassidy,* 104 N. Y. 147; *Swain* v. *Grangers' Union,* 69 Cal. 186; *Brown* v. *Bowen,* 90 Mo. 184; *Fox* v. *Abbott,* 16 Wkly. Dig. 159; *Kane* v. *Cortesy,* 100 N. Y. 132; *Corse* v. *Peck,* 102 id. 513.)   The alleged promise or agreement was not a valid one.   (*Wakeman* v. *Sherman,* 9 N. Y. 85, 92; 4 Penn. 322, 323; Story's Eq. Jur. § 1521; *Greenfell* v. *Girdlestone,* 2 Y. & Col. 60, 62; *Kyle* v. *Wells,* 17 Penn. 289, 290; *Fletcher* v. *Updyke,* 67 Barb. 367; *Bloodgood* v. *Bruen,* 8

N. Y. 362, 367.) The parol agreement, *quoad* the real estate, was an agreement to devise real estate to the plaintiff, and is absolutely void at law. (*Lisk* v. *Sherman*, 25 Barb. 433 ; *Martin* v. *Wright*, 13 Wend. 460 ; *Robinson* v. *Raynor*, 28 N. Y. 494 ; *A. B. & C. Co.* v. *Pratt*, 10 Hun, 443 ; *Merrit* v. *Seaman*, 6 N. Y. 168 ; *Tooley* v. *Bacon*, 70 id. 34 ; *Quimby* v. *Strauss*, 90 id. 664 ; *Bergman* v. *Jones* 94 id. 51 ; *Tozer* v. *N. Y., etc., R. R. Co.*, 105 id. 659.) The court erred in allowing the question put to the witness Rosevelt : " State whether or not the advice you gave Mrs. Andrews was after she had stated to you what had taken place between her and Seabury Brewster." (*In re N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 654.) The court erred in excluding the judgment-roll offered in evidence by the defendants in the case of the public administrator, etc., against the defendants. (*Doty* v. *Brown*, 4 N. Y. 71 ; *Goddard* v. *Benson*, 15 Abb. Pr. 191 ; *Krauth* v. *Bassett*, 34 Barb. 31 ; 1 Greenl. on Ev. 523 ; Smith's L. C. 20 ; How. St. Tr. 538 ; 9 Dowl. 228 ; *Bates* v. *Stanton*, 1 Duer, 79 ; 26 Barb. 16 ; *Burr* v. *Rigler*, 17 Abb. Pr. 177 ; Code Civ. Pro. § 2745 ; *In re Brewster*, 19 N. Y. S. R. 698 ; *Trust Co.* v. *Telegraph Co.*, 47 Hun, 315 ; *McCulloh* v. *Colby*, 4 Bosw. 603 ; *Muller* v. *Earl*, 5 J. & S. 388 ; 2 R. S. 88, §§ 34, 39 ; *Field* v. *Field*, 77 N. Y. 294 ; Redf. on Surr. [2d ed.] 512, 516.)

*William Allen Butler* for respondent. There was no error in the admission of the evidence relating to the statements, representations and negotiations connected with the settlement and division of the estate in May, 1881, leading up to the execution of the several written instruments connected therewith, including the release by plaintiff to Seabury Brewster, dated May 9, 1881. (*R. Co.* v. *W. Co.*, 119 N. Y. 592.) The court properly refused to rule that the release by the plaintiff to Seabury Brewster of May 9, 1881, cut off the plaintiff's cause of action. (*Chapin* v. *Dobson*, 78 N. Y. 74 ; *Juilliard* v. *Chaffee*, 92 id. 529 ; *Bookstaver* v. *Jayne*, 60 id. 146 ; *Remington* v. *Palmer*, 62 id. 31 ; *Van Brunt* v. *Day*, 81 id. 251 ;

8 Abb. [N. C.] 336; *Dodge* v. *Zimmer*, 110 N. Y. 43; *Eighmie* v. *Taylor*, 98 id. 288; *Morgan* v. *Smith*, 7 Hun, 244; *B. F. Ins. Co.* v. *Burger*, 10 id. 56; *Jones* v. *Jones*, 18 id. 438; *Unger* v. *Jacobs*, 7 id. 220.) There was no conflict of evidence as to the promise made by Seabury Brewster and communicated; the sole conflict was as to what took place at the time of the signing of the release and other papers; this raised a question of fact which was properly submitted to the jury. (*Juilliard* v. *Chaffee*, 92 N. Y. 529; *Martin* v. *Pycroft*, 2 DeG., M. & G. 785; *Jervis* v. *Berridge*, L. R. [8 Ch. App.] 351; *Remington* v. *Palmer*, 62 N. Y. 31; *Adams* v. *Hall*, 2 Den. 306; *Wheeler* v. *Billinger*, 38 N. Y. 263; *Eighmie* v. *Taylor*, 98 id. 288; *Stearns* v. *Tappin*, 5 Duer. 294.) The evidence as to the amount of loss to the plaintiff by the failure of Seabury Brewster to lease the Park Row and Broadway premises was properly admitted, and was material and relevant for the purpose of showing the existence and extent of plaintiff's claim in that regard against Seabury Brewster on May 9, 1881. (*Rector, etc.,* v. *Teed*, 120 N. Y. 583; *Wills* v. *Horton*, 4 Bing. 40.) The judgment-roll offered in evidence by defendants' counsel, was properly excluded by the court. The plaintiff was not a party or privy to that action. (*Krekeler* v. *Ritter*, 62 N. Y. 372.) The error of the trial court as to the rule of damages was properly corrected by the General Term, and the amount of the verdict properly reduced, in conformity with the opinion of the General Term. (*Fish* v. *Folley*, 6 Hill, 54; *Horton* v. *Blissett*, 4 Bing. 40; *Ogden* v. *Marshall*, 8 N. Y. 340, 343; *Wicker* v. *Hoppock*, 6 Wall. 94; *Schell* v. *Plumb*, 55 N. Y. 592.) The order of the General Term, made October 24, 1890, permitting a reduction of the verdict from $57,681 to $54,426.11, was a proper exercise of discretion, and is not open to exception. (*Whitehead* v. *Kennedy*, 69 N. Y. 462, 468; *C. E. Bank* v. *N. Bank*, 91 id. 74, 83; *Mason* v. *Williams*, 25 N. Y. S. R. 484; *Jansen* v. *Ball*, 6 Cow. 628; *Sturgis* v. *Law*, 3 Sandf. 451; *Coulter* v. *A. E. Co.*, 5 Lans. 67; *Mahar* v. *Simmons*, 47 Hun, 479.)

BROWN, J. The agreement which the plaintiff alleged in her complaint, and the breach of which constitutes her cause of action, was that in consideration of plaintiff conveying to Seabury Brewster her interest in the real estate of which Christopher Starr Brewster died seized, and giving to said Seabury a formal release of all claims which she held against him, he agreed "that by so doing she would sustain no loss, and that by his will he would leave her an equal share of his estate with the surviving children of said Christopher Starr Brewster, and an amount more than sufficient to compensate her for any loss she had sustained."

The "loss" therein mentioned had reference to a claim which the plaintiff had made against Seabury Brewster for loss of rents of the real estate conveyed, and grew out of said Seabury's neglect for a number of years to rent the said real estate which consisted of valuable land and buildings on Broadway and Park Row in the city of New York.

It appeared that Seabury was the agent of his brother Christopher during the latter's life-time and had the care and custody of his property. By Christopher's will Seabury was appointed one of the executors and trustees. The will was not, however, probated until after the making of the agreement, which is the foundation of this action. But Seabury retained possession of his brother's property and managed it for his widow and children, with their knowledge and consent, they with himself being the sole beneficiaries under the will.

The agreement alleged in the complaint appears to have been a part of a plan or scheme for the settlement of Christopher's estate. The plaintiff, who was the widow and sole devisee and legatee of Louis Brewster, one of the sons of Christopher, was pressing Seabury for a division and settlement of the estate, and also for a settlement of the claim she made against him growing out of his neglect to rent the real estate.

Negotiations covering considerable time led finally to the adjustment of plaintiff's share in all the property at $166,000, which sum was paid to her; whereupon she executed the deed

and release already mentioned, and as a consideration for and an inducement to her to settle the estate in that way and execute said deeds and release the promise sued upon was made.

It was not essential to the plaintiff's case that she should prove that Seabury Brewster had been negligent in not renting the property, or that a valid claim in her favor existed against him for loss of the rents.

The cause of action alleged was not for the loss of rents, but was upon the new promise which the parties had substituted in its stead.

That promise was made in the presence of that claim, and in order to meet and dispose of it, and in consideration that the plaintiff would consent to the settlement of the estate which Seabury Brewster proposed, and release him from all claims made against him.

The release of the claim for the rents was a good consideration for the new promise, even though a defense to the claim might have been interposed and established, and the law will presume that by the surrender and release of the old claim there was a benefit to the promisor and injury to the promisee.

It was, therefore, of no consequence what Seabury Brewster's legal liability was on the claim for the rents. It was asserted against him and was colorable at least. It was recognized by him so far as to negotiate for its settlement, and as a result of that negotiation the plaintiff executed and delivered the release and Brewster gave the new promise. The claim for the rent, whatever was its legal status, was thereby destroyed and the new promise subtituted in its stead; and this action has reference solely to the new agreement.

But the agreement was not attacked at the trial, nor is it now, for want of sufficient consideration to support it, but mainly for want of legal proof of its existence, and the claim is that it was cut off by the written release of the plaintiff, and all evidence offered to establish it was objected to by the defendants on the ground that it was inconsistent with and tended to contradict the release and destroy its legal effect.

The release did destroy and discharge the testator from all claim against him for his neglect and failure to lease the buildings in question. That was its purpose, and that it should have that effect was the intention of both parties. And no recovery could now be had by the plaintiff upon that claim.

But it is out of the delivery of that release that the agreement now sued upon arose. It had its inception with the negotiation leading to the execution of the release and sprang into existence with its delivery, and it is because the plaintiff, at the testator's request, destroyed and released that claim that she may sue on the contract she now asserts.

The whole agreement with reference to the settlement of Christopher Starr Brewster's estate rested in parole, and the execution and delivery of the release was in part execution of that agreement. It was not the repository of the agreement between the parties, but its execution and delivery was one of the obligations under that agreement. The respective promises and obligations of the parties were mutual, and those of one party formed the consideration for the other.

The whole agreement was performed, so far as it was possible, during the life of Seabury Brewster, and this action rests upon one of the obligations that he assumed, but which could be performed fully only at his death.

The rule that excludes parol evidence tending to contradict or vary a written contract had, therefore, no application to the case.

In view of the ruling of the trial court we need not consider the discussion that is had upon the briefs of counsel and in the General Term opinion as to the meaning and import of the agreement as it appears from the testimony of the witnesses.

It rested wholly in parol, and the witnesses for the plaintiff do no agree upon its precise terms. The court, at the request of the defendants, ruled and charged the jury that the only agreement which the evidence permitted them to find that Seabury Brewster made with the plaintiff was one to leave to her by his will a share of his estate equal to that which he should leave to his nephew and niece Harry and Kate.

This charge was not excepted to by the plaintiff, and if it had been, the exception could not avail him on this appeal, and stands as the acquiescent interpretation by all parties of the import and meaning of the testimony given upon the part of the plaintiff.

The trial court, however, refused to charge that the plaintiff could not recover more than an amount which, under the will, Kate and Harry were entitled to, and did charge that if Mr. Brewster failed to keep his promise she was entitled to recover, irrespective of what Harry and Kate did get under the will, that which she gave up at the time of the execution of the release, viz., the amount of her claim for lost rents, and, as this was fixed without dispute at the sum of $46,517, directed a verdict for that amount with interest.

The defendants' exception to the court's charge, and its refusal to charge, which I have quoted, in reference to the rule governing the amount of the verdict, was sustained by the General Term, and that learned court held that "the plaintiff's only claim was based upon what share she would have recovered of Seabury Brewster's estate had he kept his agreement," and upon the first argument ordered a retrial.

Upon a reargument, however, the General Term modified the verdict by allowing a recovery for an amount equal to one-third of the residuary estate, viz.: For $54,426.12, with interest, and, as so modified, directed judgment for the plaintiff.

We are of the opinion that the General Term had power to permit the plaintiff to stipulate to modify the verdict, and to direct judgment for the reduced sum, instead of ordering a new trial, even though the rule of damages applied by that court differed from that applied at the trial. The only disputed question of fact was whether an agreement had been made between the plaintiff and Seabury Brewster. If it had, both parties agreed as to its terms.

There was, moreover, no dispute, but if that agreement existed and was not obnoxious to some of the defenses set up by the defendants that the measure of damages for its breach

was either that applied by the trial court or a share of Seabury Brewster's estate.    The several sums of money which the jury might adopt as its verdict according as they applied one or the other rule of damages, was not disputed.    The loss of rents and interest was fixed at $57,681.

The residuary estate in defendants' possession was agreed to be $163,278.38 and it was stipulated that the distributive share of the surviving children of Christopher Starr Brewster (viz. : Harry and Kate) under the will of said Seabury, was one-twelfth part each if there was no equitable conversion by the will, and one-ninth each if there was an equitable conversion.

Under any rule of damages that might be adopted there was, therefore, no fact for a jury to determine.    The fact of the making of the agreement having been established the amount of the verdict that the plaintiff would be entitled to was a conclusion of law, and could, therefore, be directed by the General Term.

That learned court fell into an error, however, in awarding the plaintiff one-third of the residuary estate.    The ruling of the trial court to which I have referred, was that the agreement was to leave to the plaintiff a share of his estate equal to that which he should leave to his nephew and niece Harry and Kate.

The modification directed by the General Term is based upon the assumption that plaintiff was to be made one of three residuary legatees.    There is no view of the evidence that justifies this result, and it is entirely inconsistent with the decision first made at the General Term that the plaintiff's claim was based solely upon what share she would have received if Seabury Brewster had kept his agreement.

It was not open to the General Term to inquire whether the evidence justified a finding of an agreement more favorable to the plaintiff than that held by the trial court, nor is this court permitted to interpret the evidence in any other way than that expressed in the ruling I have quoted.

That ruling in its application to the case, limits the plaintiff's recovery to one-ninth or one-twelfth of the residuary estate.

The judgment entered by the General Term for an amount equal to one-third of the estate has, therefore, no support in the record.

Whether Harry or Kate's share in said estate was one-ninth or one-twelfth depended, according to the stipulation of the parties, upon the solution of the question whether there was an equitable conversion by the will.

The trial court was not asked to rule upon that question and it is not presented by any exception for review. Having ruled that neither share represented the measure of the plaintiff's damages, there was no occasion to ask the trial judge to decide which share the jury should adopt.

It is further claimed by the appellant that the trial court erred in not dismissing the complaint on the ground that there had been no accounting by the executors and that as there might be other and further expense of administration the exact amount of the residuary estate was not ascertained and that the plaintiff's only remedy was in equity.

The complaint stated a cause of action upon contract against the defendants and the plaintiff was entitled in the proper forum to establish her right to share in the estate. The fact that there were obstacles which prevented the ascertainment of the exact amount to which she was entitled would not have justified the court in dismissing the complaint.

The court had ample power to inquire into the amount of the estate and ascertain the sum which would be divided among the residuary legatees.

The defendant's objection went only to the mode of ascertaining that fact and not to the merits of the cause of action.

If the case was one triable at the Special Term it could have been sent to that court by the Circuit judge. But the defendants made no such request and the right to object to a trial at the Circuit did not survive the commencement of the trial before the jury.

The motion to dismiss the complaint was properly denied. No other exception requires discussion.

The judgment must be reversed and a new trial granted

unless within thirty days the plaintiff stipulate to reduce the verdict to the smallest amount possible under the views herein expressed, viz. : thirteen thousand, six hundred and six and fifty-three-one-hundredths dollars.    Upon making and filing such stipulation the judgment for such reduced amount with interest from the date o⸍ ⸍ e verdict is affirmed without costs.

All concur.

Ordered accordingly.