INGRAHAM, J.
The court on the trial charged the jury, at the request of the defendant, “that, if the jury find that there was no original liability by Bernard L. Ackermann to Mrs. Dovale, there was no consideration for his promise to make the payments to Mrs. Dovale.” Subsequently, on a motion for a new trial, the court held that this instruction was erroneous, and for that reason granted a new trial. We think the court was clearly right. It appeared from the evidence that the plaintiff had loaned to the firm of B. L. Ackerman h Sons the sum of $7,000; that the plaintiff had insisted upon the defendant’s repaying that sum; that she had then asked the defendant as to who were the partners of *8 that firm ; and that he said, “Adolph and Ben and myselfand that he (the defendant) then said, “You had no business to give that money to them without consulting me first, but I promise to give you a hundred dollars every month, the interest and the principal of your money, if you will release me of being a partner.” It further appeared by the evidence that the defendant was engaged in this business from 1855 to 1875 ; that on the 31st day of December, 1875, he sent a notice to his customers that the business in which he had been engaged “will hereafter be solely com ducted by my two sons, who will settle all outstanding business.” There is no evidence that this notice" was given to the plaintiff. The defendant then went to Paris, and remained there for about eight months, when he returned and settled up his affairs here, and in December, 1879, obtained a discharge in bankruptcy. He then went back to Europe, and remained there continuously until August, 1884. ■ When he returned, he resumed the business of B. L. Ackermann & Sons, the partnership of which was then dissolved. He resumed this business because, as he said, “I had a right to, according to the agreement with my sons when the business was passed to them. They had to pay a certain amount to my wife, and, if they did pay it, the whole business was theirs, and I released them; but, if they did not, we had a right to come back and take it. The agreement was in writing. It was lost in the removal. After we returned, the agreement existed, and the firm of B. L. Ackermann Sons was dissolved.” The witness also testified that, “in addition to the motive of friendship and sympathy in paying off this debt, I was also releasing my sons frorti an obligation that was good against them, and that was also a motive4h my mind.” It thus appears that whatever promise was.made by the defendant to the plaintiff was made after he had returned ana resumed the business, taking the assets of the copartnership under his original agreement, by which he had relinquished the business to -his sons; and that one of the considerations of making the promise was that, by the promise, he would release the sons from an obligation that was binding upon them.
The plaintiff claimed that defendant was liable as a member of the firm to which she had loaned the money. The defendant re- ■ cognized that his sons were liable, and thus made an agreement having the object to release himself from the claim of the plaintiff against him as liable for the moneys loaned to the sons during his absence in Europe, and also releasing his sons from the liability that was concededly good against them, and for which the property of the sons which had become vested in the defendant would have been liable. That there was-a perfect consideration for the new promise of the defendant, not dependent upon the validity of plaintiff’s claim against the defendant, is clear upon principle and authority. The plaintiff claims that the defendant was a member of the firm to which she had loaned money. The defendant had owned the business, and he had turned it over to his sons, uponi an agreement by his sons to pay his wife a certain sum of money each month, coupled with an agreement by which he was to be entitled to resume possession of the business if this money was *9 not paid. The plaintiff had known of his absence, but had no notice that he did not continue an active member of the firm. He had returned, and, under the terms of the agreement between himself and his two sons, had resumed the ownership and control of the business, had taken its assets, and was conducting it for his own benefit. Accepting this position as testified to by the defendant as true, it is not at all clear that he was not responsible to the plaintiff for the loan that she had made to the sons during the absence of the defendant.
But it is not necessary to determine just what, if any, legal liability rested upon the defendant. There was a claim made that he was responsible; and he, to avoid that claim, and to relieve his sons from a liability that was conceded, promised the plaintiff to pay her a certain sum per month. And the release of this claim against the defendant and his two sons, and the right of the plaintiff to enforce her claim against the property of the former copartnership, which was then in the hnnd-s of the defendant, and used by him for his own benefit, was ample consideration for the new promise to pay $100 per month until the debt was paid.This view of the obligation of the defendant is recognized by Mr.Justice Bartlett, in writing the opinion of the general term of the supreme court in the former'action between this plaintiff and the sons of the defendant (39 St. Rep. 517), where he says; “A consideration for the agreement to pay $100 a month may be found in Mrs. Dovale’s abandonment of her claim against Mr. Ackermann, Sr., in his capacity of partner, as evidenced by her letter September 3,1885. The rule i? well settled that the compromise of a doubtful claim is a good consideration for a promise to pay money; and when an action is brought upon the promise, it is no answer to show that the first suit could not have beer, maintained, or that the claim was not a valid one. See Stewart v. Ahrenfeldt, 4 Denio, 190; White v. Hoyt, 73 N.Y. 505; Andrews v. Brewster, 124 N. Y. 433; 36 St. Rep. 412. The promise is expressly alleged in the complaint, and is clearly the cause of action sued on by the plaintiff.
We do not think that the letter of September 3, 1885, debarred the plaintiff from contradicting any of the admissions in her letter so as to entitle the defendant to a dismissal of the complaint. The most that can be said for it is that it is evidence against her as to the terms of the new agreement, and was to be considered by the jury in determining that question. If her present claim is true that that letter did not state the terms of the new agreement the defendant was bound to make the payments to the plaintiff which he subsequently made; and the mere fact that he continued to make payments that he was bound to make cannot estop the plaintiff from enforcing the contract as it really existed. The fact that the plaintiff did not except to the instructions given by the court would prevent the court from rectifying a clear error in granting a new trial.
We think, therefore, that the order granting the new tria] was right, and should be affirmed, with costs. All concur.