WIELAND, Appellant, v. PRESIDENT, ETC., OF DELAWARE & H. CANAL CO., Respondent. (Supreme Court, Appellate Division, Third Department. July 6, 1899.) Action by Catharine Fisher Wieland, as administratrix, etc., against the president, managers. and company of the Delaware & Hudson Canal Company. From a judgment entered upon a nonsuit, and an order denying a motion for a new trial, plaintiff appeals. Reversed. Dyer & Ten Eyck (Jacob L. Ten Eyck, of counsel), for appellant. Lewis E. Carr, for respondent.
PER CURIAM. Upon the granting of the nonsuit in this case, the trial court held that upon the question of the negligence of the defendant the plaintiff was entitled to have the case go to the jury, but that the evidence was not sufficient to take to the jury the question of contributory negligence. In this latter respect we think that the trial court erred. The evidence in some respects varied from that given on the former trial, which was the subject of the former review by this court (30 App. Div. 85, 51 N. Y. S. 776); but there was not. in effect, we think, such a difference as to require a rule different from the one laid down on the former appeal. We therefore conclude that a new trial should be granted. Judgment reversed, and new trial granted; costs to abide the event. All concur, except PARKER, P. J.,

dissenting in opinion, and PUTNAM, J., not sitting.

LANDON, J. (concurring). The train was running between 50 and 60 miles an hour,—say 55 miles. Intestate could see but little of the track until he got within 30 feet of it, and then could see for 500 or 600 feet west,—say 550 feet. He was going up hill, at a slow gait,—say 4 miles an hour. It would take the train 6¼ seconds to make the 550 feet. It would take the intestate 5.14 seconds to make 30 feet. If he had looked west 6 seconds before reaching the track, he would not have seen the coming train. The train, owing to the cut, could not be heard before it was seen. He was a prudent, sober man. The Presiding Justice intimates that he should have stopped his horse, and looked. He might have done so in vain. Is it not a question of fact?

PARKER, P. J. (dissenting). The highway at Rockefeller crossing, in the county of Albany, runs nearly north and south, and there crosses the defendant's railroad track, which runs nearly east and west; there being a cut and something of a curve to the west of such crossing, and the railroad there being but a single track. The plaintiff's intestate, while going from the north to the south, in an open milk wagon drawn by one horse, was struck upon this crossing by one of defendant's engines coming from the west, and was killed. This action is brought by his widow and administratrix to recover damages against defendant for such killing. The trial judge nonsuited the plaintiff, upon the ground that she had failed to show that deceased's own negligence did not contribute to the accident; and from the judgment entered thereon this appeal is taken. The plaintiff does not dispute the rule that the burden was upon her to show that the deceased was himself free from negligence which contributed to his death, and it is not pretended that there is any direct evidence as to deceased's conduct upon this occasion; but direct proof is not required. His absence from contributory negligence may be established by proof of facts and circumstances from which it may fairly be inferred that he was not at fault; and if, upon that question, different conclusions may be drawn from the facts shown, it is one for the jury, and not for the court, to solve. We so held when this case was before us on a former appeal. 30 App. Div. 87, 51 N. Y. Supp. 776. It becomes necessary, therefore, to examine what facts are shown bearing upon this question. Upon an examination of the evidence, this state of facts becomes apparent: As deceased approached the crossing he had a clear view up the track towards the east for a long distance, but towards the west, owing to the existence of a bank through which a long cut had been made in which to lay the track, he could see but little of the track until he got within 30 feet of it. At that point he could see up the track towards the west for 500 or 600 feet; and from that point, as he approached the track, no material change was made in the distance for which he could see. Such is the evidence of plaintiff's engineer, who made the map which she put in evidence; and it must, I think, be taken as the fact upon this appeal. Evidently, the danger to be apprehended was from a fast train approaching from the west; and the crossing in that respect was a dangerous one. A glance would inform him of the situation to the east of him, but to the west a fast train would cover the distance over which his vision could reach in a very short space of time. The deceased had traveled over that crossing almost daily, at about the same time of day, for several years, and was perfectly familiar with it; his horse was a gentle and slow-moving horse; the approach to the railroad over that distance of 30 feet was slightly up grade; and the road was some 40 feet wide there, and smooth the whole width of it. The accident occurred between 12:30 and 1 o'clock p. m., on a bright, clear day, with no wind or other surrounding disturbances to distract his attention. The engine was hauling a passenger train, running on its regular trip, although possibly some minutes late, and traveling at the rate of 50 or 60 miles an hour. The collision was such that the deceased was caught and held upon the front of the engine, the horse was thrown upon the south side of the track, and the wagon on the other side. There was also evidence to show that the noise of the approaching train could not be heard by a person at that crossing before it could be seen, and upon this appeal we must assume such to be the fact. Such were the conditions under which the accident occurred, and the question is: Is there anything here to indicate that the deceased used any care whatever in entering upon this crossing? or is there anything to show that, if used, reasonable care would not have prevented the accident? I cannot discover that there is any fact to show in what manner the deceased drove upon that crossing. If he had driven heedlessly and without looking, in front of the train, he would have been struck in the very manner in which he was struck; and, therefore, in the absence of any proof of what he did do, no inference can arise that he was without fault. It is to be borne in mind that the inference must arise from facts clearly established by the proof (Ruppert's Case, 154 N. Y. 90, 94, 47 N. E. 971), and not from conjecture, or even from a presumption that a man would not, under such circumstances, expose himself to danger (Reynolds' Case, 58 N. Y. 248, 252). The plaintiff, however, claims that the utmost care in looking would, under the circumstances shown, have been unavailing, and that hence the inference may be drawn that the deceased was himself free from contributory negligence, and that the defense of contributory negligence is not permissible when the facts indicate that no amount of care on the deceased's part would have prevented the accident. Counsel argues that, even if the deceased had stopped just as he was about to enter upon the track, and looked for the train, it might at that moment have been just around the curve, outside the limits of his vision, and that, if he had then driven onto the track, and attempted to cross under the belief that he might safely do so, the train would come into view, and run the intervening 500 feet, before he could get entirely over. When this case was here on the former appeal, it appeared that at no point be-

fore entering upon the track could the deceased have seen the train more than 150 feet away, and that it would run that distance in 2 seconds of time. That presented a case where practically it was impossible to see the approaching train, if it happened to be just out of sight around the curve, in time to avoid it; but in this case it is clear that for 500 feet, at least, the track to the west was open to view, and a very different condition is presented. Even if it be conceded that the deceased stopped and looked just before entering onto the track, and also that the train was then only just outside his view, yet it is not a correct assumption that he must have been struck by the train in his attempt to then cross. Under the evidence, the train would have occupied 7 or 8 seconds to run the 500 feet, and, if he at once urged his horse across, it seems clear that he would in that time have been able to cross in safety. Moreover, it appears that he was so struck that his horse was cut loose from the wagon, and thrown on one side of the train, and the wagon on the other; thus indicating that the horse had hardly crossed the single track when the engine struck it. Now, assuming, as plaintiff does, that the deceased looked to the west just before his horse entered upon the track, it would seem more than probable that the engine was then in sight, inasmuch as the horse, from that point, had gone a distance of not much more than his own length before he was struck. Conceding that the train and the deceased were in the precise situation the plaintiff puts them in, and that the deceased acted just as the plaintiff supposes that he did, nevertheless it by no means follows that under such circumstances the accident must have occurred. It would rather seem that, under such conditions, the deceased would have passed safely over; and so the claim that reasonable care on deceased's part would not have prevented the accident is but a mere assumption. But the difficulty is that the situation thus assumed by the plaintiff does not appear from the evidence. It does not appear that the deceased did look to the west just as he was about to enter upon the track, nor does it appear that the train was just out of sight around the curve as he entered upon the track. For aught that the case shows, it may have been in plain sight when he drove onto the crossing. From the evidence, therefore, we can no more infer that reasonable care on his part would have been unavailing than we may infer that the deceased was himself free from fault. The circumstances of the case tell us nothing as to the deceased's conduct with reference to the accident. So far as they disclose, he may have attempted to hurry across ahead of the train. The plaintiff is nonsuited, not because we infer from the circumstances that deceased's own negligence contributed to his death, but because they do not show that it did not. The rule is now controlling that the plaintiff, in order to recover, must make it appear, either by direct evidence or else by inferences fairly deducible from the facts proven, that the deceased was free from negligence on his part; "and when the circumstances point as much to the negligence of the deceased as to its absence, or point in neither direction, a nonsuit should be granted." Wiwirowski v. Railroad Co., 124 N. Y. 425, 26 N. E. 1024. In this case the circumstances point in neither direction. The deceased may have stopped and listened, and got caught, as the plaintiff's counsel suggests; but there is nothing in the evidence indicating that he did. He may have caught sight of the train just before entering on the track, and made a foolish effort to cross ahead of it; or, he may have driven heedlessly upon the track, without thought of an approaching train. But, again, there is no evidence to indicate which he did, or that he did either of those things. Thus the facts proven fail to show a freedom from contributory negligence on deceased's part, and therefore the nonsuit was correct. The judgment should be affirmed, with costs.