# Cases

# FIRST DEPARTMENT

IN THE

## APPELLATE DIVISION,

### April, 1901.*

---

PLAYA DE ORO MINING COMPANY, Appellant, *v.* OTIS S. GAGE,
Respondent, Impleaded with Others.

*Corporation — assignment by stockholders to one of their number of certain shares of
stock "to be disposed of by him as occasion may require" — he may recognize moral
obligations — what agreement as to the use to be made and the return of stock is
collateral to the assignment thereof.*

Persons to whom the entire capital stock of a corporation had been issued con-
tributed a certain amount of their holdings to the corporation for working
capital. Subsequently they transferred another portion of their holdings to
one Francklyn "to be disposed of by him as occasion may require for the
prosecution of the interests of the Playa de Oro Mining Co. (the corporation)
and raising the necessary money to carry on the business."

*Held,* that the wide discretion given by the depositors to Francklyn was such as
would permit him to recognize the moral obligation to reimburse one of their
number, for his personal sacrifices and losses of stock, cash and expenses in
the interest, although not at the request, of the corporation, by transferring to
him a portion of the shares deposited under the agreement and that the corpo-
ration had no power to control Francklyn in this disposition of such shares.

Evidence that a stockholder of a corporation executed an assignment under seal
of a number of shares of stock to the corporation which issued the same, in
reliance upon a contemporaneous oral agreement on the part of the corporation
that the assignment should be used only for the purpose of a settlement with
a certain person and that when the shares came into the possession of the cor-
poration after the settlement was effected they would be retransferred to the
stockholder, does not impeach or vary the terms of the assignment, but tends to
establish a collateral independent agreement which furnished part of the con-
sideration for its execution.

---

*The other cases of this term will be found in volume 59 App. Div.— [REP.

APPEAL by the plaintiff, the Playa de Oro Mining Company, from a judgment of the Supreme Court in favor of the defendant Otis S. Gage, except from so much thereof as dismissed the said defendant's seventh counterclaim, entered in the office of the clerk of the county of New York on the 30th day of July, 1900, upon the decision of the court rendered after a trial at the New York Special Term dismissing the complaint upon the merits and establishing a counterclaim of the defendant Otis S. Gage, and requiring that the plaintiff transfer to said defendant certain shares of stock of the plaintiff corporation and awarding to him costs and an additional allowance.

*Paul D. Cravath,* for the appellant.

*William M. K. Olcott,* for the respondent.

PATTERSON, J. :

This action was brought against the defendant Gage and others to have an assignment and transfer of 5,000 shares of the plaintiff's capital stock, made by one Charles G. Francklyn to the defendant Gage, declared to be null and void ; to have an account of those shares of stock and the proceeds thereof taken ; to have the rights and interests of certain parties, other than the defendant Gage, if any, ascertained and determined in the action ; and to have it adjudged that the defendant Gage pay to the plaintiff what, if anything, shall, on the taking of such account, appear to be due it — the plaintiff being ready and willing and offering to pay what, if anything, should, upon the taking of such account, appear to be due from it to him. The contest, as it was waged before the court at Special Term, was confined to the plaintiff and the defendant Gage, the other parties defendant to the action apparently making no claim to any part of the stock or its proceeds. The complaint is framed altogether in fraud, and although there appears in the proof an instrument which purports upon its face to be an assignment of 5,000 shares of stock by the defendant to the plaintiff, that instrument is not relied upon as a source of title. The action is constructed in such a way as to entitle the plaintiff to recover, if at all, only upon proof of fraud on the part of the defendant in the procurement of the 5,000 shares, the subject of the action.

The relations existing between the plaintiff and the defendant Gage and other parties, shareholders and directors in the plaintiff corporation, are very peculiar, and the proof shows an exceedingly loose administration of the affairs of the company, particularly with respect to its capital stock and the uses to which some of its shares were applied. It is shown that at some time prior to the year 1891 Charles G. Francklyn, Clarence E. Dougherty and the defendant Gage, became interested in a mining property in Ecuador, in South America, which property was purchased for a money consideration of about $9,000. In October, 1891, the persons named formed a corporation under the laws of the State of Kentucky, with a capital of $10,000,000, divided into 100,000 shares of $100 each. It would appear that the whole of that capital stock was issued in payment for the property, and that Gage, Dougherty and Mrs. Susan S. Francklyn became the principal owners of the shares. Those persons contributed a certain amount of their holdings to the corporation for working capital; those shares were absolutely at the disposal of the corporation and became its property; but some time in 1893 the condition of the company was such as to require additional funds, whereupon Mrs. Francklyn, Mr. Dougherty and the defendant Gage placed in the hands of Charles G. Francklyn certain of their shares and executed and delivered to Mr. Francklyn an instrument in the following words:

"New York, *June 7th,* 1893.

" We, the undersigned, hereby transfer to Charles G. Francklyn the number of shares of the Playa de Oro Mining Co. stock set opposite our respective names, to be disposed of by him as occasion may require for the prosecution of the interests of the Playa de Oro Mining Co. and raising the necessary money to carry on the business:

" OTIS S. GAGE, Five thousand shares, 5,000 shares.

" CLARENCE E. DOUGHERTY, Ten thousand shares (10,000).

" SUSAN S. FRANCKLYN, Five thousand shares (5,000)."

It appears that Mr. Francklyn used 15,000 of the 20,000 shares for some of the purposes of the company, and in or about the month of March, 1895, he had 5,000 shares of this contributed stock still in his hands. On the 7th of March, 1895, he assigned and transferred

to the defendant Gage those 5,000 shares. The plaintiff attacks that transfer and sets up that it was procured by the defendant Gage by fraudulent representations made to Francklyn. It insists that Francklyn held the stock as trustee for it; that he had no right or authority to transfer it to the defendant Gage; that the transfer was without consideration, and that it has the right to follow the shares into the defendant's hands and to compel restitution of them.

The trial court, in giving construction to the instrument under which the 20,000 shares were deposited with Mr. Francklyn, and in defining the relations established between the parties under it, took the view that those shares were a voluntary donation by the parties for the purposes of carrying on a common enterprise in which they were jointly interested, and that the transfer was made to Francklyn as a person in whom they, at that time, had confidence; and that it was made with the intention of leaving to his discretion the disposition of the shares with the proviso only that they should be disposed of for the benefit, or in the discharge of obligations of the enterprise.

We think that is the proper view to be taken of the instrument and of the intent of the parties to it. Those parties certainly did not intend that the shares thus deposited with Mr. Francklyn should go to the company in the same way as their prior contributions to working capital. Under the instrument of June 7, 1893, no title passed to the company, and none was intended to pass. The parties depositing the stock selected Mr. Francklyn as their appointee to dispose of their contributed shares for the benefit of the company in such manner as he should deem best for the benefit or interest of that company. They relinquished their ownership and title to the shares; they clothed him with such ownership and title, but restricted his control and power over the stock to a use which should be in some undescribed and general way for the benefit of the plaintiff.

By virtue of this instrument the plaintiff did not acquire the right to compel Francklyn to devote the stock to any particular purpose. What should be done with it was absolutely for him to determine, and if, in the exercise of his judgment and in good faith, he applied it to some purpose which he regarded as beneficial or useful

to the corporation, he discharged his full duty to the depositors of the stock and to the corporation, and no one else could call him to account.

The plaintiff's case is built upon the testimony of Mr. Francklyn. He swore that in March, 1895, he delivered the 5,000 shares to Gage upon request, Gage stating that he had parted with large amounts of his own stock, to raise money for, and that he had loaned money to, the company and in furthering its interests; that he had made large sacrifices of his own stock; that he (Francklyn) naturally supposed that Gage had used a great deal for the benefit of the company, and he gave him 5,000 shares and delivered to him the certificates, and took from him a receipt in which it is stated that the shares were given to reimburse Gage for losses of stock, cash and expenses "heretofore made" on behalf of the company. Francklyn also testified that, at the time he made the transfer, the company was not indebted to Gage for anything except $10,000, which was not included in the consideration for which the transfer was made; that at the time it was made the company was not indebted to Gage for any stock which he had loaned to the company or given to it to dispose of for the company's benefit; that Gage had not disposed of any stock at the company's request or expended money at its request, and that there were no accounts between Gage and the company except the $10,000, and that Gage had presented no claim to the company and had not threatened the company with any suit or proceeding, but he also swore that at the time he gave the 5,000 shares in March, 1895, he supposed that Gage had used a great deal of stock in the interest of the company.

On behalf of the defendant it was shown that, intermediate 1891 and 1893, he had used for the benefit of the company something over 9,000 shares of his individual stock. He does not appear to have had any strictly legal claim against the corporation for reimbursement of those shares. In the loose manner in which the business and affairs of this corporation had been conducted, it seems that Gage and Francklyn and Dougherty had been in the habit of using shares of their own stock in various indirect ways of promoting, as they deemed, the interests of the corporation. Gage had received from Dougherty more than 4,000 shares in return for part of the 9,000 shares of his own stock he had used in the manner indicated.

A very plain account is given in the evidence of the persons to whom and the purposes for which he, in his desire and effort to aid the company, had given away 5,000 of his shares not included in his settlement with Mr. Dougherty. Gage swore that in every instance in which he parted with his stock he conferred with Francklyn, and was assured by Francklyn (who was at that time president of the company) that his sacrifices would be recognized and that his stock would be restored to him. Francklyn denied this, but the trial judge placed reliance upon the story told by Gage.

On the facts, as they must have been found by the learned trial judge, the plaintiff was not entitled to recover. It had no power to direct Mr. Francklyn in his disposition of the shares. If the latter, recognizing from time to time that Gage was using his own stock for the benefit of the company, promised to reimburse him, it cannot be said that the use of the 5,000 shares in fulfilling that promise was an application of those shares to some purpose not for the benefit of the company or in violation of the terms upon which the deposit was originally made with Francklyn. The wide discretion given by the depositors to Francklyn was such as would permit him to recognize the moral obligation to reimburse Mr. Gage for his personal sacrifices in the interest of the company. There was no fraud and no misrepresentation used by Gage in procuring the transfer to him of the shares, and as this complaint is framed and as the cause was presented on behalf of the plaintiff in the court below, there is no legal or equitable ground upon which the plaintiff can claim the right to a retransfer of those shares.

We, therefore, think that the cause was properly decided, so far as the 5,000 shares are concerned, and the judgment dismissing the complaint on the merits must, to that extent, be affirmed.

The learned judge at Special Term recognized and gave enforcement to but one of the counterclaims set up by the defendant Gage, namely, his right to receive from the plaintiff 1,250 shares of stock which, in substance, it was claimed had been loaned by him to the plaintiff for the purpose of being used in a transaction with a firm of Cary & Whitridge. It seems that that firm had an option of taking from the plaintiff a large amount of stock, and that in order to make up the amount the defendant Gage loaned to the company 1,250 shares of his individual stock. Messrs. Cary & Whitridge did

not exercise the option, and thereupon the stock became returnable to the owners thereof. It is not denied that Mr. Gage's 1,250 shares were deposited by him to be transferred to Cary & Whitridge if they exercised the option to take the stock. After the shares became returnable to their owners, a controversy arose between the plaintiff and Francklyn, president, concerning his administration of the affairs of the company, and very serious charges were brought against Francklyn, all of which subsequently became the subject of settlement. Among other things, Francklyn was charged with accountability for the 1,250 shares belonging to Gage, and which had been deposited to await the exercise of the Cary & Whitridge option. The 1,250 shares being thus brought into the controversy with Francklyn, he insisted that as part of any arrangement that should be made to settle that controversy there should be an assignment made by Mr. Gage to the company of his 1,250 shares. Gage objected to relinquishing to the plaintiff absolutely his right to the shares, but subsequently, and on April 1, 1896, he executed an instrument in and by which he did transfer and set over to the plaintiff all his right, title and interest in and to the shares which at that time, it would appear, were in the possession or under the control of Francklyn. The defendant Gage was induced to sign the transfer or assignment, absolute on its face, to the company, and that assignment is now relied upon by the plaintiff as conclusive against Gage, and as establishing in it the title to the 1,250 shares. It is an instrument under seal. The overwhelming testimony of the members of the committee of the plaintiff having in charge the settlement of the matters in controversy with Francklyn and that of Gage and others is that when Gage signed this instrument of transfer or assignment of the 1,250 shares it was distinctly agreed that it should be used only for the purpose of the settlement with Mr. Francklyn, and the counsel for the plaintiff and of the committee stated to Gage that it would be used only for that purpose, and that upon a settlement being made with Francklyn of the extensive demands urged against him by the plaintiff, the shares coming into the possession of the plaintiff, they would immediately be restored or retransferred to the defendant Gage. The evidence relating to the contemporaneous agreement as to the purpose for which the transfer should be made came into the case under an objection, not urged as to its compe-

tency to establish the conditions under which the delivery of the instrument was made to the plaintiff, but as relating only to the question of the consideration upon which Gage executed the document. It is not now claimed that the evidence was inadmissible as tending to vary the terms of a sealed instrument. The testimony was not offered or intended to affect or vary those written terms or to make it appear that the instrument was anything less or other than it purported to be upon its face, namely, an absolute and complete transfer of the shares to the plaintiff. But it was received as establishing a purely collateral and independent agreement relating to the purpose for which it was intended and for which it was to be used by the plaintiff and which was its real consideration. It was solicited from Gage; it was given by him with the full intention that it should operate as a transfer; but, at the same time, it was agreed by the plaintiff, represented by its committee, that when it had answered the purpose of its delivery and a full settlement was had with Francklyn, by which the shares would come into the possession of the plaintiff, that then it would restore those shares to the defendant Gage. By this collateral agreement the plaintiff had devolved upon it the legal title to the shares, but the independent and collateral agreement related to what should be done with those shares after they came into the possession of the plaintiff. The case is not one in which it can be said that there was a deed delivered with an agreement that it should become inoperative and that the grantee should restore the property to the grantor. The parties meaning and intending that the legal title should pass to the plaintiff by the assignment, it was executed and delivered for that purpose; but, independently of that assignment, there was made a contract which formed its consideration that when the great advantages that were to be derived by the company from a settlement with Francklyn were secured and realized and the shares came into the possession of the company, they would be transferred back to the defendant Gage.

Under the facts of this case and the situation of the parties the agreement of the committee and counsel of the plaintiff as to what should be done with the shares when they came into the possession of the company was collateral matter. It does not impeach or vary or affect the terms of the assignment or transfer, but indicates the

consideration therefor. .That assignment or transfer operates just as it was intended by its terms to operate. The other and collateral agreement related to something to be done in the future, after the purpose of the assignment or transfer had been accomplished, and was part of the consideration for the execution of the assignment or transfer. (*Andrews* v. *Brewster*, 124 N. Y. 433.)

In this view of the case we think the counterclaim was properly recognized, and the judgment thereupon in favor of the defendant was right.

Upon the whole case we think the judgment should be affirmed, with costs.

Van Brunt, P. J., Rumsey and McLaughlin, JJ., concurred.

Judgment affirmed, with costs.