Carlos G. Nadal, Appellant, *v.* Childs Securities Corporation, Respondent.

First Department, April 23, 1963.

*David M. Palley* for appellant.

*Robert D. Levin* of counsel (*Joel J. Spector* with him on the brief; *Demov & Morris,* attorneys), for respondent.

BERGAN, J. Plaintiff seeks to avoid the effect of a release signed by him for a good consideration, which in terms discharged defendant, on the ground of defendant's fraud in misrepresenting the instrument of release. The court at Special Term has dismissed the complaint pursuant to subdivision 6 of rule 107 of the Rules of Civil Practice.

Plaintiff had a claim against the owners of real estate in the sum of $25,000 as a finder's fee. He settled the claim for $7,500 upon the execution of an agreement between the owners and defendant as purchaser.

The agreement recited that the owners (sellers) should pay plaintiff a finder's fee of $7,500 and by addendum provided that the defendant should indemnify the sellers from any claim by plaintiff in excess of $7,500. It also provided that the defendant should be responsible if any other demand of brokerage or for a finder's fee were made based on a claimed furnishing of information to defendant.

Attached to the agreement between the owners and defendant was a release executed by plaintiff. In the instrument of release plaintiff agreed to the contract provisions between sellers and buyers for the payment by the sellers of $7,500.

The text of the release was as follows: "Payment of the same shall constitute a full and complete settlement of all claims, finders' fee, brokerage commission or any other claim of the undersigned and shall act as a complete and general release to all parties of this Agreement and to the property which is the subject of this Agreement."

Plaintiff claims that he was "told and I believed" that the agreement was "between myself and the sellers" and that the receipt of $7,500 "would release the sellers and only the sellers

and no one else." He further claims that the statements " as to the meaning and import of that agreement" were made by an officer of defendant corporation and that he " relied solely upon " such representations.

The agreement is plainly not an agreement " between myself and the sellers " and it is not a release of " the sellers and only the sellers ". It is an agreement among several parties, including the defendant, and it expressly releases " all parties of this agreement " and the property the " subject of " the agreement.

No man who could read and understand English was entitled to accept a " meaning and import " of these words diametrically opposed to the text. A different rule applies to the illiterate or the person unfamiliar with the English idiom (*Pimpinello* v. *Swift & Co.*, 253 N. Y. 159), but that rule does not embrace this plaintiff (cf. *Northridge Coop.* v. *32nd Ave. Corp.*, 2 N Y 2d 514, 528) and the ordinary result obtains that he is " conclusively bound " (*Pimpinello,* p. 162).

Although, of course, there may sometimes be open factual questions on the scope of a general release and the intent with which it is executed, a release and disavowal of liability expressed as part of a contract and manifestly tied into the very subject matter of the contract and affecting its parties leaves open no such factual question (*Oxford Commercial* v. *Landau,* 12 N Y 2d 362).

Moreover, after the release had been executed by plaintiff and he was in possession of the sellers' check for $7,500 which contained this legend, " Payment in full for all compensation and expense in connection with sale * * * as per agreement * * * between said Sellers and Childs Securities Corporation and release heretofore given by payee ", plaintiff wrote the defendant's representative that " I cannot accept the check in the amount of $7,500 bearing the endorsement, paid in full for all compensation ".

Nevertheless with clearly grasped knowledge then of the scope of the release and the effect of the indorsement and collection of the check, he presented it and it was paid. This amounted to a ratification of the release (*Nassoiy* v. *Tomlinson,* 148 N. Y. 326).

It is suggested from certain rather obscure words in the plaintiff's affidavit that there was some sort of novation or new agreement effected between the plaintiff and defendant, quite independent of the finder's fee basis of the original claim. These words indicate that to induce plaintiff to sign the release pursuant to which the sellers were to pay plaintiff $7,500, defendant undertook to pay plaintiff another $7,500 for signing the release.

This aspect of plaintiff's affidavit rests on these paragraphs: " The sellers refused to pay me a finder's fee in the sum of $25,000; they agreed to pay only $7500. and the contract so provided. The sellers also insisted that I sign an agreement with them agreeing to accept a finder's fee of $7500. In order to induce me to accept the $7500. fee from the sellers, Mr. Aird [defendant's representative] told me that Childs Securities Corporation would pay me $7500. and he also reaffirmed at that time that I would be employed to supervise the construction for which I was to receive a fee of 5% plus 1% for expenses."

That there was a separate liability effected by an agreement by defendant to pay $7,500 to induce plaintiff to sign the release is not argued by plaintiff in his brief in this court. Such a theory of separate liability is not only not pleaded in the complaint; it is quite inconsistent with the complaint and ruled out of consideration by the words of the pleading itself.

The complaint alleges that defendant's agreement to pay $7,500 was for a finder's fee and was made before negotiations were entered into for the sale of this property to defendant and hence, of course, could not possibly be the basis of a consideration of inducement to plaintiff to sign the release.

Specifically, the complaint describes the agreement by defendant to pay $7,500; and then pleads that " thereafter " defendant entered into negotiation for the purchase. The independent consideration for the delivery of a release; or the exclusion from the scope of a release of matters or claims maturing in the future, considered in such cases as *Andrews* v. *Brewster* (124 N. Y. 433), *Cahill* v. *Regan* (5 N Y 2d 292), and *Farnham* v. *Farnham* (204 App. Div. 573), have no relevancy here.

The order and judgment dismissing the complaint should be affirmed, with costs.

EAGER, J. (dissenting). I would reverse the order of Special Term. From the record here, it is clear that there are issues of fact precluding the summary dismissal, as a matter of law, of the complaint at this time.

This action was brought to recover for a breach by the defendant of contracts whereby, as the buyer of land in Florida, he is alleged to have agreed to pay plaintiff a finder's fee and also to employ plaintiff to supervise the construction of an apartment house upon the premises and to pay him for his services in this connection 5% of the cost of construction plus a fee of 1% to cover expenses. The defendant, on this motion pursuant to subdivision 6 of rule 107 of the Rules of Civil Practice, contends that the plaintiff's claims are barred by a release executed and

delivered on the receipt by him of $7,500 from the sellers of the premises. The plaintiff did have a separate claim against the sellers for a finder's fee, real estate commissions or other form of compensation which had been fixed at $7,500, and it is the plaintiff's contention that the release, though purporting to release all parties from all claims and demands, was intended solely as a release of all demands in connection with his said separate claim against the sellers.

It is settled with certainty that "a release may not be read to cover matters which the parties did not desire or intend to dispose of." (*Cahill* v. *Regan*, 5 N Y 2d 292, 299.) Accordingly, "the courts look behind the release when an issue is raised with respect to what the parties intended to release" (*Pascoe* v. *Electromatic Mfg. Corp.*, 3 A D 2d 818). That such an issue exists here is clearly apparent from the documents and affidavits, and consequently, we may not, at this juncture of the action, summarily deprive the plaintiff of the opportunity to litigate the same.

By the terms of the written agreement for the sale of the Florida property and the written addendum thereto, it was provided that the sellers should pay a finder's fee of $7,500 to the plaintiff at or prior to the closing and that the defendant, as purchaser, should indemnify and save harmless the sellers from any claim against them by the plaintiff for any amount in excess of the said $7,500. So, there was here a fixed liability on the part of the sellers to the plaintiff for the said sum of $7,500, and the defendant's agreement in connection therewith was limited to the obligation to indemnify the sellers from any liability to plaintiff for any sum in excess of the $7,500. Based upon these premises, the plaintiff executed the agreement of release which was annexed to the agreement of sale and the addendum thereto. Most significantly, the opening words of this agreement by plaintiff stated that he, "C. G. Nadal, agrees to the provisions of the foregoing Agreement and Addendum thereto which provides for the payment to him at the closing of the sum of Seven Thousand Five Hundred Dollars ($7,500.00) from Sellers." Thus, this agreement of release, itself, plainly as can be, indicated that it was executed and delivered in connection with the specific claim of the plaintiff against the sellers which had been fixed at $7,500. And significant, too, is the fact that the said plaintiff, on the execution of the said agreement of release, received precisely such sum of $7,500 which was admittedly owing to him by the sellers. Concededly, nothing was paid by the defendant (the purchaser) to the plaintiff.

The instruments must be read together (*Nau* v. *Vulcan Rail. & Const. Co.*, 286 N. Y. 188, 197) and, if as indicated upon the face thereof, the parties were contracting solely with reference to the demand of $7,500 owing by the sellers to the plaintiff, then, the agreement of release, although specified to be a release of all claims against all parties and to the property, may very well be limited to a release of all claims with respect to the particular demand being settled and paid. Such result would follow from the application of the well-established rule that where " a release contains a recital of a particular claim, obligation, or controversy and there is nothing on the face of the instrument, other than general words of release, to show that anything more than the matters particularly specified was intended to be discharged, the general words of release are deemed to be limited thereby." (*Rubinstein* v. *Rubinstein*, 109 N. Y. S. 2d 725, 732 [BREITEL, J.], affd. 279 App. Div. 1073, affd. 305 N. Y. 746, citing cases.)

Of course, such rule, as a general rule of construction, will give way to competent evidence establishing a contrary intent on the part of all parties, but the developing of such evidence requires a trial. Moreover, even if such rule may not be applied to give prima facie support to plaintiff's position, there is such ambiguity in the documents and uncertainty in the record as to entitle plaintiff to a trial upon the issue of whether or not the parties were contracting solely with reference to the plaintiff's said claim against the sellers.

There is evidence, in the form of a letter written by the defendant, that, sometime prior to the closing of the contract of sale, the defendant was cognizant of a claim of plaintiff against the sellers for " real estate commission or other form of compensation * * * in the amount of approximately $25,000 ", and the defendant wrote that it was disclaiming " any responsibility regarding compensation for Mr. Nadal in this transaction other than any arrangements made privately between the parties ". Then, there is the affidavit of plaintiff that, in order to induce him to accept $7,500 from the sellers in lieu of the claimed fee of $25,000, Mr. Aird, representing the defendant, expressly stated to plaintiff that defendant would also pay to him $7,500 on account of a finder's fee and that Mr. Aird also then reaffirmed plaintiff's employment to supervise the construction of the proposed building. Particularly significant is the fact that Mr. Aird, who submitted a reply affidavit, did not specifically deny these averments of plaintiff.

Whether a new and binding obligation on the part of the defendant to also pay the plaintiff a finder's fee originated at

the time of the delivery of the release, as would appear from the plaintiff's affidavit, or whether, at such time, an obligation on defendant's part, then existing, as alleged in the complaint, was merely reaffirmed and continued, is immaterial. The plaintiff was not bound to plead in anticipation of the defense of release and to frame his allegations with a view of avoiding it. (Cf. *Bard-Parker Co.* v. *Dictograph Prods. Co.,* 258 App. Div. 638; *Wheeler* v. *State of New York,* 286 App. Div. 310.) At this stage of the action, technical defects in pleading or variances which may be corrected, though having a bearing on the issue of credibility, are not available to absolutely deprive plaintiff of substantive rights (cf. *Curry* v. *Mackenzie,* 239 N. Y. 267, 272). In any event, whichever way it was — an obligation then created or then reaffirmed — the execution and delivery of the release, instead of nullifying defendant's liability, furnishes a consideration for and supports the existence or continuance of the same. Delivered and accepted in recognition of defendant's obligation, the release would not also operate to destroy it. This is clear. (See *Cahill* v. *Regan,* 5 N Y 2d 292, 299, *supra*; *Lucio* v. *Curran,* 2 N Y 2d 157, 165; *Andrews* v. *Brewster,* 124 N. Y. 433, 440; *Farnham* v. *Farnham,* 204 App. Div. 573, 574.)

Moreover, we must not lose sight of the fact that the complaint also alleges a cause of action for breach of the contract whereby the defendant agreed to employ plaintiff to supervise the construction of an apartment house on the premises and to pay him therefor. Concededly, such contract was entirely open and executory as of the time of the execution and delivery of the release by the plaintiff. There had been no performance under or breach of the said alleged contract and, as of then, plaintiff had no outstanding claims thereunder to be released. Thus, the release, though written as a release of all claims of the plaintiff against all parties, but not specifically providing for a release of future claims or for cancellation of the open and executory contract, does not expressly by its terms have the unequivocal effect of discharging such claims or canceling the particular contract. In any event, it may, depending upon all the facts and circumstances, be restricted in its operation to exclude a discharge of any claims which might subsequently arise for breach of the open contract. (See 76 C. J. S., Release, § 53; *Cahill* v. *Regan, supra*; *Lucio* v. *Curran, supra,* p. 165; *Farnham* v. *Farnham, supra.*)

The " general expressions in a release may not carry its effect beyond the particular matters which the parties had in view ". (*Thorn Wire Co.* v. *Washburn & Moen Mfg. Co.,* 159 U. S. 423, 443. See, also, *Kirchner* v. *New Home Sewing Mach. Co.,* 135 N. Y. 182, 187; *Cahill* v. *Regan, supra,* p. 299; *Viskovich* v. *Walsh-*

*Fuller-Slattery,* 16 A D 2d 67, 68, 69.) So, many times, where a defendant relied upon an alleged general release, we have had occasion to withhold summary relief to him, holding that the question as to the effect of the release was dependent upon the intent of the parties concerned and that this involved issues of fact. In fact, the plaintiff's position here finds abundant support in the decisions of this court. (See *Pascoe* v. *Electromatic Mfg. Corp.,* 3 A D 2d 818, *supra*; *Giannini* v. *Sheeran,* 276 App. Div. 760; *Simon* v. *Simon,* 274 App. Div. 447; *Terf Constr. Corp.* v. *Gallagher,* 256 App. Div. 900; *Rubinstein* v. *Rubinstein, supra.*)

Finally, it is clear that this action is not barred by the delivery and acceptance by the plaintiff, following the release, of the sellers' check for $7,500, with the indorsement that it was "in full for all compensation and expense in connection with sale * * * as per agreement" between the sellers and the defendant "and release heretofore given by payee". This check, on its face, purported to represent a payment *by the sellers* of exactly the amount owing by them to the plaintiff and, by words indorsed thereon, referred to the release which was given on the settlement of this claim of the plaintiff. Consequently, the acceptance and cashing of the check by plaintiff would not effect a satisfaction of a distinct and separate claim against the defendant; and, particularly, would not operate to cut off plaintiff's rights under an alleged contract of employment which was entirely open and executory at the time of the delivery of the release. This is so, by virtue of the well-settled rule that "[t]he payment of an admitted liability is not a payment of or a consideration for an alleged accord and satisfaction of another and independent alleged liability. (*Ryan* v. *Ward,* 48 N. Y. 204; *Nassoiy* v. *Tomlinson,* 148 N. Y. 326; *Laroe* v. *Sugar Loaf Dairy Co.,* 180 N. Y. 367.) '' (*Mance* v. *Hossington,* 205 N. Y. 33, 36; see, also, *Hudson* v. *Yonkers Fruit Co.,* 258 N. Y. 168; 1 C. J. S., Accord and Satisfaction, § 34.)

The matter of the alleged release or satisfaction of plaintiff's claims is in the nature of an affirmative defense. Plaintiff has the clear right to show facts and circumstances in avoidance of such defense. A motion under rule 107 may not be availed of to deprive plaintiff of that right and of the right to have a trial of the disputed issues. (*Conklin* v. *Palisades Interstate Park Comm.,* 278 App. Div. 588; *Fitz Gerald* v. *City of Ogdensburg,* 284 App. Div. 767.)

The recent decision of *Oxford Chemical* v. *Landau* (12 N Y 2d 362), cited in the majority opinion, is not in point and is not controlling. The determination there upholding as a matter of

law the defense of release was reached on the basis that there were "no obvious or latent ambiguities" in connection with the documents. Furthermore, the defendant here seeks to broaden the release to include a discharge of an entirely executory contract and to bar causes not in existence at the time the plaintiff executed the alleged instrument of release.

The defendant's motion to dismiss the complaint should have been denied.

BREITEL, P. J., and VALENTE, J., concur with BERGAN, J.; EAGER, J., dissents in opinion in which RABIN, J., concurs.

Order and judgment dismissing the complaint affirmed, with costs to the respondent.