GEORGE H. CLARK et al., Executors, Appellees, v. J. W. CLARK, Appellant.

**RELEASE:** Construction—Subsequent Demands. A written release and settlement between parties will not, manifestly, embrace *subsequently accruing* demands, unless the writing very clearly embraces such demands.

*Appeal from Clinton District Court.*—A. P. BARKER, Judge.

FEBRUARY 12, 1924.

SUIT by plaintiffs, as executors, to recover on three promissory notes executed by defendant to the deceased, who was the father of defendant. Other facts and the defense appear in the opinion. Trial to the court without a jury, and judgment against defendant on all three notes, with interest. Defendant appeals.—*Affirmed.*

*Wolfe, Wolfe & Claussen,* for appellant.

*Frank W. Ellis, John E. Purcell,* and *Clark & Clark,* for appellees.

PRESTON, J.—The note for $4,565 is dated August 11, 1919, and is in the following form:

"On demand.............after date I promise to pay to the order of A. J. Clark, Four Thousand, Five Hundred Sixty-five Dollars, with interest thereon from date at the rate of five per cent per annum, payable annually."

The note contains other provisions as to place of payment, interest on interest, etc. The note bears the following indorsements, dated August 2, 1920.

"Interest paid to this date, $221.90." "It is agreed between the parties to this note, that the interest paying date be changed to August 1st, the rate of interest to 6%, and the date of payment to on or before August 1st, 1922

(Signed)          J. W. Clark,
                  A. J. Clark."

The note for $2,853.63 is dated December 1, 1919, and is in the same form as the first, with indorsements on the same date as before, signed as before.

"Interest paid to this date, $95.10"

Also, the same agreement as to change of due date, date of interest, etc. The third note, for $3,317, is dated August 2, 1920, and is in part as follows:

"On or before the first day of August, 1922, I promise to pay A. J. Clark or order, Three Thousand, Three Hundred Seventeen Dollars, with interest thereon from date until paid at the rate of six per cent per annum, payable annually, for value received," etc.

It will be observed that finally the notes all matured August 1, 1922, and the interest was paid to August 2, 1920, which was the date of the last note.

The answer admits the execution of the notes as alleged, and the indorsements. As an affirmative defense, defendant alleged that the payee in the several notes was his father, and that, about February 4, 1901, his father executed and delivered to the defendant a warranty deed; that defendant accepted the terms of said deed, and recorded the same in March, 1901, and entered into possession of the real estate described therein, and continued in possession and control of said land until he sold the same in 1913; and that there is no liability on his part on said promissory notes to the estate of A. J. Clark. He asks that the plaintiffs' petition be dismissed. The answer also refers to the warranty deed and a provision therein as follows:

"As a further consideration for the above described property, the said J. W. Clark for himself, his heirs, executors and assigns hereby releases the said A. J. Clark from all claims against his estate as his son and heir and heir presumptive and waives and relinquishes all right of equity which he may have or hold in said estate as such heir presumptive. And the said J. W. Clark accepts this with other advancements made to him and for which the said A. J. Clark now holds his receipt as his full share of said estate, subject however to any further bequests that the said A. J. Clark may make to him, his heirs or

assigns in his last will and testament, and in consideration for this release it is agreed and understood that the said J. W. Clark is released from all liabilities to said estate."

The deed conveyed 160 acres in Clinton County, Iowa.

The plaintiffs demurred to that part of the answer last referred to, on the ground that the notes sued upon were executed long after the contract of settlement alleged in the answer, and that said contract and the deed did not and could not cover, embrace, or include a debt from defendant to plaintiffs' intestate arising after the execution of the deed. It was agreed that the demurrer might be submitted with the case, and that the allegations of the answer should be considered as denied.

The defendant testified that he was 56 years of age, and the son of A. J. Clark; was associated with his father in business for a number of years; worked for him since he was of age; was in business with him up to 1900, and helped him in his grain business thereafter. Had an adjustment of all business relations in 1900. Father and mother were divorced in 1900. Had certain negotiations with father in the fall of 1900 and 1901. Those negotiations were reduced to writing.

"Q. You may state what became of that written contract.

"Objection, Mr. Wolfe: This is not the contract that is pleaded. The theory is that the court is entitled to all the surrounding circumstances.

"Court: The objection is good on that statement of counsel.

"Witness continues: The signature to the deed is that of my father. He wrote every word of it in his own hand. It is his own proposition. The deed was delivered to me and recorded. (The deed was offered in evidence.)

"The Court: As I understand it, the defense is based on that deed."

The parties seem to have assented to the statement by the court. Witness continues:

"I entered into possession of the land.

"Q. At the time that deed was made and delivered to you, you may state whether or not you were indebted to your father. (Objected to because witness was incompetent, under Section

4604 of the Code, to testify to personal transactions, and further, that it was irrelevant, there is no such issue in the case, and immaterial, because it does not tend to prove or disprove any issue in the case, and because it calls for the opinion and conclusion of the witness. Admitted subject to the objection.) A. I was not indebted to him in any way. At the time the deed was made, father held no notes of mine."

Such is the case made.

It will be noticed that the deed was executed some 18 years prior to the execution of the notes. There is no claim that the notes were renewal notes, or that the debt was in existence at the time of the execution of the deed. The contrary appears from the evidence. So far as appears from the record, deceased may have, in a transaction entirely separate and long after the execution of the deed, loaned money to the defendant. The notes themselves import a consideration. Code Section 3069. The notes subsequently issued are reaffirmed by payment of interest on the first two, and by a written agreement between defendant and his father, making a change in the interest rate. Neither is there any claim that the notes have been paid.

The real contention of defendant in argument is that the terms of the contract set out in the deed are binding upon the defendant, because an heir may validly contract with his ancestor to release his expectancy as such heir. Appellant cites *Jones v. Jones,* 46 Iowa 466; *Stennett v. Stennett,* 174 Iowa 431; *In re Thompson's Estate,* 26 S. D. 576 (Ann. Cas. 1913 B, 446, note). Appellant contends that, if the contract is binding upon the defendant, it is mutually binding upon the representatives of the estate of A. J. Clark.

We do not understand appellees to deny the right of defendant to release his expectancy as heir, and say that the cases cited are not applicable. Practically all the provisions of the deed quoted relate to a release by the defendant; relate to a release by him to his father of his interest in the estate. So far, it could not be claimed that the opposite of the proposition would be true, and that thereby the father was releasing any obligation coming from the defendant, such as the notes in suit. The last clause in the deed reads:

"And in consideration for this release it is agreed and understood that the said J. W. Clark is released from all liabilities to said estate."

If the notes in suit had been in existence at the time the deed was executed, we would have a different proposition, and in that case there might be force in appellant's contention. We think the clause just quoted refers to the condition as it then existed,—that is, at the time of the execution of the deed,—and that the words "all liabilities" could only mean present liabilities or obligations. A provision in the deed is that defendant released his share in the estate subject to any further bequests that his father might make to him by will. It may be true that it was probably contemplated by the father that, if the estate increased in value in the future, and if he believed defendant was entitled to a further share of the estate, deceased could provide further for defendant by bequest. To sustain appellant's contention, it would be necessary to infer other facts and engraft them upon this provision in the deed, which we think were not within the contemplation of the parties at the time the deed was made. For instance, it would be necessary to infer that the word "liabilities" and the word "estate" have no reference to the word "advancements" theretofore made, and as used in this provision of the deed; that, when deceased used the word "liabilities," he forgot about the advancements for which he held a receipt from defendant, which he evidently considered in the nature of an obligation; that, though defendant was not left these notes by will (the only way he could obtain any further interest in his father's estate), nevertheless he is to share in the estate to the extent of the notes in question. This would be contrary to the terms of the provision made in 1901. Further, it would be necessary to conjecture that defendant and his father had in contemplation that, 18 years after the execution of the deed, deceased would loan the defendant a large amount of money and take these notes therefor, and that, when such notes were taken, the time extended, and the interest rate changed, it would be a mere formality, and that, if deceased, after 1901, loaned money to the son for which notes were given, the son should have the prior advancements, 160 acres of land, and these notes, as his share of the estate, without a last will to that effect.

It would seem quite clear that a settlement of the notes in suit, under the circumstances, was not within the contemplation of the parties when the deed was made, and that debts born 18 years after the release were not included in the provisions of the deed. The situation of the parties at the time the deed was executed should be taken into consideration. The defendant had resided with his father for many years. The father had at that time made certain advancements to the son, for which deceased held the defendant's receipt, as his full share of said estate. Notwithstanding this, deceased gave defendant, in addition thereto, 160 acres of land. In doing this, it is probable that the father took into consideration the value of the estate at the time the deed was executed. It may be true that, if a demand falls within the fair terms of a release, it is discharged thereby. As a rule, demands originating at a time a release is given, or subsequently, and demands subsequently maturing, are not discharged by the release, unless expressly embraced therein or falling within the fair import of the terms employed. 34 Cyc. 1092.

It was held in *Walston v. Calkins Co.*, 119 Iowa 150, that an accord and satisfaction does not operate as a bar to matters not contemplated by the parties in their agreement, nor is it valid and binding, wholly without consideration. See, also, 12 Corpus Juris 341. The *Walston* case is somewhat analogous to the present situation. In *Watson Coal & Min. Co. v. James*, 72 Iowa 184, 190, it was held that, while a settlement is presumed to include all matters of difference, it is not a bar to an action on a claim not intended to be included. See, also, as bearing upon this proposition, *Barr v. Clinton Bridge Works*, 179 Iowa 702, 709. In *Bassett v. Lawrence*, 193 Ill. 494 (61 N. E. 1098), plaintiff contracted to purchase stock from defendant, the price to be paid in weekly installments. Thereafter, the installments having been paid in full, so far as matured, defendant desired an advance on the contract, which plaintiff refused to make; but he consented to loan defendant $1,000, taking defendant's note therefor. Plaintiff continued to pay the installments as they matured, and, though there were negotiations about applying the amount of the note on the contract, it was never so applied. The contract was thereafter terminated by an agreement which

related to nothing but the stock transaction, and which provided that, from and after that date, no indebtedness existed in favor of either of the parties against the other. *Held* that such general words of the release were, in effect, restrained by the recitals to the subject-matter, and that such release did not extinguish the note. See, also, *Seymour & Co. v. Butler,* 8 Iowa 304, 308; *Ryan v. Becker,* 136 Iowa 273, 277.

Without further discussion, we are of opinion that the trial court properly found for the plaintiff. The judgment is— *Affirmed.*

ARTHUR, C. J., EVANS and FAVILLE, JJ., concur.