**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0568-17T1

SELECTIVE CASUALTY INSURANCE
COMPANY,

    Plaintiff-Appellant,

v.

EXCLUSIVE AUTO COLLISION
CENTER, INC., ANTHONY LAKE,
GERALD HEYMACH, and ARTHUR
LAKE,

    Defendants-Respondents.

_____

Argued July 16, 2018 — Decided August 16, 2018

Before Judges Whipple and Suter.

On appeal from Superior Court of New Jersey,
Law Division, Sussex County, Docket No. L-
0359-15.

Gordon S. Graber argued the cause for
appellant (Sullivan and Graber, attorneys;
Gordon S. Graber, of counsel and on the
briefs; Rafael A. Llano, on the briefs).

James E. Mackevich argued the cause for
respondents (Mackevich, Burke & Stanicki,
attorneys; James E. Mackevich, on the brief).

PER CURIAM

Plaintiff Selective Casualty Insurance Company (Selective) appeals from the July 24, 2017 order dismissing counts one, three, four, and five of its complaint against defendants, Exclusive Auto Collision Center, Inc. (Exclusive), Anthony Lake, Gerald Heymach, and Arthur Lake, and the September 15, 2017 order denying reconsideration. We affirm.

Defendant Anthony Lake and his wife own Exclusive. Defendant Gerald Heymach is Exclusive's general manager, and defendant Arthur Lake, Anthony's brother, also worked for Exclusive.

In 2013, Selective issued a Garagekeeper's insurance policy to Exclusive for liability and casualty claims. It provided coverage for vehicles in the care, custody, and control of Exclusive and general commercial liability coverage.

On May 17, 2013, Exclusive filed a complaint against Selective for failure to make insurance payments. The suit was settled, effective November 16, 2014. Included was a release that provided:

> Selective releases and gives up any and all claims and rights that it may have against Exclusive, its successors, agents or assigns. This releases all claims including those of which Selective is not aware of and those not mentioned in this [r]elease. This [r]elease applies to all claims resulting from anything which has happened up to now. This settlement and release are a resolution of all issues between Selective and Exclusive in the litigation entitled <u>Exclusive Auto Collision Center v. Selective Auto Insurance Company of New Jersey</u>, Docket No. L-3672-13.

On November 24, 2013, a strong windstorm caused tree branches to fall on vehicles in Exclusive's lot. Exclusive filed a claim with Selective with a list of vehicles; Selective received notice of the claim on November 26, 2013. Selective's adjuster inspected the listed vehicles and agreed to pay for the damage.

The list did not include a 2011 BMW owned by Gianinder Singh (the Singh BMW). According to Exclusive, in 2011, the Singh BMW was damaged and brought to Exclusive for repairs. Exclusive repaired the damage and was paid by GEICO. Selective was not involved in that.

On December 19, 2013, Singh brought the vehicle to Morristown BMW because something was wrong. A mechanic for Morristown BMW thought a leak in the vehicle's rear quarter panel that Exclusive repaired two years prior might have been responsible for the Singh BMW's electrical problems. At the direction of Morristown BMW, the Singh BMW was sent to Exclusive to be inspected. The vehicle arrived on either Thursday, January 9 or Friday, January 10, 2014. Defendant Heymach prepared an estimate to repair some damage but did not examine the leaking rear quarter panel.

That weekend, there was another strong storm with wind and rain. According to Exclusive, during this storm, a falling tree limb hit the Singh BMW, damaging a tail light and causing water to enter the trunk. Exclusive dried out the trunk, repaired the

tail light, and returned the vehicle to Morristown BMW. Defendant Anthony Lake told Morristown BMW to instruct Singh to file a claim with his insurance company for the electrical damage. Exclusive also advised Selective of a potential claim when it became apparent that Morristown BMW blamed Exclusive for the damage.

Selective adjuster Wendy Doyle entered the following notes in Selective's claim log on January 27, 2014:

> [Heymach] called me earlier and said that there was one other vehicle involved. Returned call left message.
>
> Spoke to [Heymach] obtained information from him on the 6th vehicle. Order inspection. He said the tail light was broken from the tree and water got into the trunk. They replaced the light themselves and dried out the trunk. Apparently, there was more water in the trunk than thought now the wires are corroded and have to be replaced.

After the Singh BMW was returned to Morristown BMW, Selective appraiser Eugenio Santos inspected the vehicle. Doyle filled out an assignment sheet for Santos, which indicated the vehicle was damaged during the November 2013 storm. Santos confirmed the replacement of the tail light and prepared an estimate. Santos determined the vehicle was a total loss and issued a check to BMW North America for $37,805.83, and to Morristown BMW for $13,938.58. Selective then sold the vehicle for salvage value.

4

Selective's claim log notes, dated January 29, 2014, indicate Morristown BMW attributed the vehicle's damage to Exclusive. In particular, Santos wrote that Morristown BMW noted "MUST SEND TO BODY SHOP FIRST TO FIX WATER LEAK FROM REPAIR WELDS IN REPAIR!!!" When Santos asked for clarification, Morristown BMW stated "this was how the water got into the trunk due to poor workmanship by the shop." Also on January 29, 2014, Doyle entered the following note in the claim log:

> I called [Heymach] at insured. He was and wasn't surprised. He said Yeah it was some storm we had. He said there was water in the trunk and it got into the electrical compartment.

Exclusive asserts the November storm was a windstorm without rain, and there was over a 1/2 inch of rain during the January storm.

On February 19, 2014, Doyle received a telephone call from "Art from BMW." Art explained the electrical damage was caused by the broken tail light and had nothing to do with faulty welding. "Art from BMW" was defendant Arthur Lake, Anthony's brother. At that time, Arthur was a liaison between Exclusive and Morristown BMW and had a desk at Morristown BMW's offices. In his deposition, Arthur confirmed he spoke with Doyle regarding the Singh BMW.

Selective reviewed the Singh BMW claim and became suspicious after learning that Exclusive performed welding work on the vehicle in 2011. According to Singh, Morristown BMW told him the damage

was likely due to "continuous water leakage" because "whoever fixed the car probably did not do a good job."

On June 4, 2015, Selective filed a complaint against defendants, alleging violations of the New Jersey Insurance Fraud Prevention Act, breach of contract, breach of good faith and fair dealing, and unjust enrichment. Selective maintains Exclusive fraudulently represented that the Singh BMW was damaged during the November 2013 storm. Defendants filed an answer and counterclaim, asserting claims for breach of contract and breach of fiduciary duties. According to Exclusive, whether the source of the damage to the Singh BMW was the defective repair in 2011, or water infiltration when the tail light was broken by the falling tree limb, its insurance policy with Selective would have covered both causes of damage.

On October 31, 2016, defendants moved for summary judgment. The court denied defendants' motion without prejudice on January 6, 2017, to allow for the completion of discovery. On June 19, 2017, defendants filed a second motion for summary judgment, arguing, among other things, the previously executed release barred Selective's current cause of action. On July 11, 2017, Selective filed a cross-motion for partial summary judgment, seeking a declaration that defendants violated the New Jersey Insurance Fraud Prevention Act and to dismiss the counterclaims.

On July 24, 2017, the trial court issued an order with a statement of reasons. Regarding the Singh BMW, the court found the November 16, 2014 release barred Selective's cause of action. In particular, the court noted the language of the release broadly included "all claims, including those of which Selective is not aware and those not mentioned in this release." The court determined the Singh BMW was included because "the language of the release clearly refers to all possible claims arising out of actions occurring prior to the release date November 16, 2014." The court dismissed defendants' counterclaims for breach of contract and bad faith.

On August 7, 2017, defendants moved for frivolous litigation sanctions, and on August 9, 2017, Selective moved for reconsideration of the July 24, 2017 order. On September 15, 2017, the judge delivered his decision from the bench, denying both motions. This appeal followed.

When we review a grant of summary judgment, we use the same standard as the trial court. Globe Motor Co. v. Iqdalev, 225 N.J. 469, 479 (2016) (citations omitted). A court should grant summary judgment, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to

A-0568-17T1

a judgment or order as a matter of law." Ibid. (citing R. 4:46-2(c)). The evidence must be viewed in "the light most favorable to the non-moving party and analyze whether the moving party was entitled to judgment as a matter of law." Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012) (citation omitted). "Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Iqdalev, 225 N.J. at 479 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)) (alteration in original).

Selective argues the trial court engaged in improper fact-finding when it determined Selective was aware of a potential fraud claim against Exclusive when it executed the release and erroneously interpreted the release. Selective contends it was not on notice of the true nature of the Singh BMW claim because Exclusive intentionally and materially misrepresented the claim was from the November 2013 storm. Selective asserts after the release was executed, it discovered the Singh BMW was involved in a prior accident, Exclusive performed repairs on it for the prior accident, and it was not present at Exclusive's lot during the November storm.

In his statement of reasons, the judge stated:

> Defendants claim that in late January of 2014 BMW notified Plaintiff of a possible claim due to Defendants' defective welding repair. It is apparent from an email exchange between Selective adjuster Wendy Doyle and Selective appraiser Eugenio Santos that Selective was aware of the alleged claim for defective welding by the Defendants. . . . Despite knowing this, Selective settled the claim and destroyed the vehicle, all prior to the release date.

The court concluded any claim regarding the Singh BMW was swept up in the broad language of the release since Selective knew of an issue with that claim in January 2014 - before it executed the release.

We agree the record supports the conclusion Selective was on notice that the Singh BMW's damage may have been attributable to something other than tree limb damage. Selective's own claim log illustrates on January 29, 2014, Santos wrote Morristown BMW reported "MUST SEND TO BODY SHOP FIRST TO FIX WATER LEAK FROM REPAIR WELDS IN REPAIR!!!"

Moreover, while Selective continually alleges Exclusive misrepresented the Singh BMW was damaged in the November storm, it provided no evidence Exclusive representatives made such a statement. There may have been confusion since there were two separate incidents in which falling tree limbs damaged vehicles during a storm. Furthermore, because the Singh BMW was destroyed, it is impossible to now determine if the damage was caused by

Exclusive's repair in 2011 or by the January storm that broke the tail light, causing water to enter the vehicle. Since the release broadly covered "any and all claims . . . including those of which Selective is not aware," the trial court correctly determined it covered the Singh BMW claim.

Selective contends the release only applied to claims that accrued at execution, and the parties only intended to settle the unrelated prior litigation. However, the express language of the release broadly encompasses any and all claims Selective had or may have had with Exclusive. "A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner." Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009) (citing DiProspero v. Penn, 183 N.J. 477, 496-97 (2005)). A court does not "make a better contract for either of the parties than the one which the parties themselves have created." Maglies v. Estate of Guy, 193 N.J. 108, 143 (2007) (Hoens, J., dissenting) (citation omitted). "[W]hen the terms of a contract are clear and unambiguous, there is no room for construction and the court must enforce those terms as written." Watson v. City of E. Orange, 175 N.J. 442, 447 (2003) (citations omitted). As the trial court determined, the release's broad, clear, and unambiguous language includes the Singh BMW claim, which was known, when Selective executed the release.

Selective compares this matter to <u>Central Paper Distribution Services. v. International Records Storage & Retrieval Service, Inc.</u>, 325 N.J. Super. 225 (App. Div. 1999), arguing a plenary hearing was required to determine the scope of the release. In <u>Central Paper</u>, we reversed a grant of summary judgment, finding the trial court improperly determined whether the dealings between the parties constituted an offer and acceptance to create a contract, without a plenary hearing. <u>Id.</u> at 232-33. We determined there were genuine issues of material fact precluding summary judgment. Here, there is no genuine issue of material fact. The release's language expressly details that all of Selective's claims against Exclusive up to the effective date were subject to the release. The release broadly covered all claims, including those unknown.

Selective argues the trial court should have held a plenary hearing to ascertain whether the parties intended to waive claims procured by fraud when executing the release. It asserts the court ignored the interpretive principles for construing a general release established in <u>Bilotti v. Accurate Forming Corp.</u>, 39 N.J. 184, 203 (1963). Reliance on <u>Bilotti</u>, however, is misplaced. There, our Supreme Court held a general release could not shield the defendants from liability when there was fraud in the inducement. <u>Id.</u> at 204-05. It concluded that agreement did not

11

provide for a release from "[a] fraud claim arising out of the transaction." Id. at 205. Here, Selective does not allege Exclusive fraudulently induced it to enter into the release, but that the scope of the release does not cover fraudulent transactions.

Selective contends the court should have allowed extrinsic evidence to discover the parties' intent under Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293 (1953). Selective has not illustrated how extrinsic evidence could aid in the interpretation of the release, while not altering its clear language. If Selective expected the release to encompass only the prior litigation, it could have executed a limited release or included exclusion provisions. We examine a release as we would any other contract to discern the intention of the parties. When express language defines the terms, the parties are bound and precluded from alleging a contrary intent in order to vary the terms. Domanske v. Rapid-American Corp., 330 N.J. Super. 241, 246 (App. Div. 2000).

Finally, we note Selective's representative, Doyle, testified Exclusive's policy would have covered defective repairs or damage from a falling tree branch. As such, it is unclear why Exclusive would intentionally misrepresent that the Singh BMW was involved

in the November 2013 windstorm since the insurance policy should have covered the damage anyway.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0568-17T1